be paid into court.   Pecksport C. R. Co. v. West, 20 App. Div. 636, 47 N. Y. Supp. 230; Code Civ. Proc. § 3378.

The order confirming the report of the commissioners should be made.

Motion granted.

(57 Misc. Rep. 492.)

### WASHINGTON LIFE INS. CO. v. SCOTT.

(Supreme Court, Trial Term, New York County.   January, 1908.)

1. INSURANCE—AGENT FOR INSURER—CONVERSION—FIDUCIARY RELATION—EVIDENCE.

A domestic life insurance company sued defendant as a fiduciary agent under Code Civ. Proc. § 549 (2), alleging a contract of employment with defendant as its general agent under an agreement to collect and pay over to plaintiff all premiums, and alleged the renewal and termination of the contract, and that during his employment it had received certain moneys from premiums by plaintiff's policy holders, and had never paid over the same to plaintiff, but had converted the same.   Defendant admitted the agreement, but alleged that it was modified so as to destroy the fiduciary relation created by the agreement and create the ordinary relation of debtor and creditor, and showed departures from the requirements of the original contract known by plaintiff at each renewal of its agency, and that all moneys received by him were deposited in a bank in defendant's name as general manager, drafts upon which were made by checks drawn in the name of plaintiff and signed by defendant as general manager or by his brother as agency director; that such drafts were drawn in connection with plaintiff's business.   Held, that defendant was liable for the amount of premiums collected less such disbursements as were ratified by plaintiff, together with interest, from the date of the ratification of his agency.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 107.]

2. CONTRACTS—PRESUMPTIONS—EXECUTION.

Where a contract appointing defendant general agent in the state for a life insurance company did not show where it was executed, the presumption is that it was executed within the state.

3. INSURANCE—AGENT FOR INSURER—CONVERSION—WHAT CONSTITUTES.

Where defendant was appointed state agent for a life insurance company, with authority to collect premiums, and was required to remit when requested and refused to pay over the balance on demand, it constituted a conversion whether New York Insurance Law, Laws 1892, p. 1949, c. 690, § 38, providing that every agent of an insurance company collecting moneys shall be responsible in a fiduciary capacity therefor, was applicable or not.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 107.]

4. ARREST—VIOLATION OF TRUST.

Where jurisdiction of the person of the general manager of a life insurance company was acquired by personal service within the state, plaintiff was entitled to avail himself of the remedy provided by Code Civ. Proc. § 549 (2), authorizing an arrest for violation of trust, whether the conversion of moneys collected occurred in the state or elsewhere.

5. INSURANCE—AGENT FOR INSURER—CONVERSION—WHAT CONSTITUTES.

Where a general manager of a life insurance company failed to pay over moneys collected, it constituted a conversion whether or not the company had accepted checks for certain of the moneys collected, so that the right to arrest was not waived, nor did such acceptance convert the claim to one of simple debt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 107.]

Action by the Washington Life Insurance Company against Blair T. Scott for moneys raised for plaintiff's use. Judgment for plaintiff. See 119 App. Div. 847, 104 N. Y. Supp. 898.

Samuel B. Clarke, for plaintiff.
Ellison, MacIntyre & Davis, for defendant.

BRADY, J. The plaintiff is a corporation formed under the laws of the state of New York. On or about the 13th day of May, 1901, the plaintiff and defendant entered into an agreement in writing, signed by both, wherein and whereby the said company appointed the defendant its general agent for the purpose of procuring applications for life insurance, and effecting such insurance as should be satisfactory to the company, and for the purpose of collecting and promptly paying over to the company as its representative all premiums when collected, and of otherwise performing such duties in connection with the business of said agency as might be required of him by the officers of the company. The agreement further provided that the said agent should act exclusively for said company, and devote his entire time, talents, and energies to the business of the agency, and in the conducting of which he should be governed by the instructions given him from time to time by the officers of said company. The compensation of the agent was to be commissions on premiums paid to the company. The district to which said general agency was assigned comprised the states of Oregon, Washington, and Idaho.

The agreement further provided that the fee of the medical examiner should not be paid by the agent, but by the company direct from the home office, and that advertising should not be done at the expense of the company. Provision was also made that the agent should remit to the company on Monday of each week the entire amount collected during the preceding week, and that an account sent by the company to the agent each month should be returned by him to the company within the first five days of the succeeding month as his own monthly statement. It was also provided that all moneys received for premiums or otherwise under said agency are a fiduciary trust, and should not be used for any other purpose whatsoever, but should be immediately deposited in a bank to be approved by the company in the name of "Blair T. Scott," as general agent of the Washington Life Insurance Company, and not otherwise, and should be remitted weekly. Provision was made for other details not of importance to consider here, and that either party might terminate the contract on 30 days' notice, and that the company might terminate it at any time for good cause.

The agreement also provided that the company would pay the agent a salary of $208.33 per month for one year from May 1, 1901, based upon the paying for $800,000 of insurance written and paid for within one year from that date, and, if he failed to write that amount of insurance within said year, then the salary paid him should be charged against any commissions due him. The company also agreed to allow him, upon his submitting proper itemized vouchers, traveling expenses not to exceed $75 per month, office expenses at Portland and Seattle

$83.33 per month, and certain other expenses $187.50 per month. This agreement was admitted in evidence and marked "Plaintiff's Exhibit A."

The defendant accepted the agency referred to in said agreement, and proceeded to represent the plaintiff thereunder. He continued to act as general agent for the plaintiff in the aforesaid states until March 3, 1905, when such agency was revoked by the plaintiff by written notice to that effect given more than 30 days prior thereto. In the meantime the agency had been continued from year to year by letter from plaintiff to defendant, and on the 26th day of May, 1904, the plaintiff appointed the defendant its superintendent of agencies for the entire United States. This appointment was supplementary to the general agency already held by him. The letter making such appointment was admitted in evidence and marked "Defendant's Exhibit No. 1." It appears therefrom that the defendant was to be paid a salary of $7,500 per annum from June 1, 1904, in monthly installments at the end of each month, which he was authorized to charge in his account as general agent if he so desired. The company therein also agreed to pay the defendant's necessary traveling expenses upon proper vouchers therefor.

The complaint alleges the making of the contract of agency and its renewal and termination, and avers that between May 1, 1904, the date of the last renewal, and March 3, 1905, the date of the termination thereof, the defendant in the course of his employment aforesaid and in a fiduciary capacity had and received to the use of the plaintiff certain moneys exceeding the aggregate amount of $5,000, which he as plaintiff's agent had collected from holders of policies issued by plaintiff for premiums due thereon; that said moneys so had and received, though demanded, have never been paid over or delivered by the defendant to the plaintiff, but that the same have been by the defendant wrongfully and in violation of his trust converted by defendant to his own use.

Judgment is demanded for $5,000, and such additional amount as may be established to have been had and received by defendant to plaintiff's use as aforesaid, with interest and costs. The action is brought under subdivision 2 of section 549 of the Code, and an order of arrest was obtained, and the defendant arrested.

The defendant by his amended answer admits the making of the agreement as alleged in the complaint, but alleges that the same was so modified by the acts and customs of the parties, and the provisions thereof so waived by the plaintiff, as to alter the relations between the parties to such a degree as to destroy the fiduciary relation apparently contemplated by the text of the agreement, and to create the ordinary relation of debtor and creditor and destroy the elements upon which the plaintiff based his action. He further contends that the several renewals made after the expiration of each succeeding year subsequently to the making of the original contract were of the contract as so modified. The uncontradicted testimony shows that almost from the beginning of his agency as fixed by the original contract his manner of procedure differed widely from that provided by the contract, and such deviation was with the knowledge and assent

of the plaintiff.   The provision requiring him to devote his entire time, talents, and energy to the business of plaintiff's agency was waived by the plaintiff, as instanced by its appointment of him on May 26, 1904, as its superintendent of agencies, the duties of which position would necessarily require much of his time.   The provision requiring defendant to deposit all moneys received by him as such agent in a bank to be approved by the plaintiff in the name of Blair T. Scott, as general agent of the Washington Life Insurance Company, and to remit the same weekly to the plaintiff, was not strictly complied with.   Remittances were not made weekly as required by the contract, and, when made, were not of all moneys received, but of balances which remained after deductions made by the defendant for commissions, salaries, office expenses, and many other items, and were accompanied by reports showing these deductions and showing also at times on the debit side amounts charged against the defendant for premiums not yet actually received by him, and which amounts were reimbursed by the plaintiff.   All these departures from the requirements of the original contract were known to and acquiesced in by the plaintiff at the time of each renewal of the agency.   The moneys received by the defendant as general agent of the plaintiff were, however, deposited by him in a bank approved by the plaintiff in his name as "general manager," drafts upon which were made by checks bearing upon their face the name of the Washington Life Insurance Company, and signed by either the defendant as "general manager" or by his brother as "agency director," and such drafts were made only for disbursements in connection with plaintiff's business.   In February, 1905, the defendant delivered to the plaintiff four reports of premiums collected by the defendant, dated respectively February 6th, February 10th, February 14th, and February 16th, and at the same time gave checks signed by Blair T. Scott, general manager, to the order of the president of the plaintiff company for $1,-058.89, $1,838.98, $862.31, and $1,726.13, respectively, and drawn upon the First National Bank, Portland, Or., aggregating $5,486.31, the sum of the balances shown by said reports.   Payment of these checks by the bank was stopped by the defendant.

It is contended by the plaintiff, and perhaps proven, that the defendant's account was overdrawn when each of these checks, except the first, was presented for payment.   Upon the trial the defendant moved to dismiss the complaint upon 10 separate grounds, viz.:   First, that it was not shown that the defendant received the money in a fiduciary capacity; or, second, retained it in a fiduciary capacity; or, third, converted it to his own use; fourth, that the rights of the parties depend on the law of Oregon, which has not been proved; fifth, that section 38 of the New York Insurance Law, Laws 1892, p. 1949, c. 690, does not apply; sixth, that the acceptance of the defendant's checks waived the right of arrest and converted plaintiff's claim into one of simple debt; seventh, that the proof shows simply the relation of debtor and creditor between the parties; eighth, that the plaintiff waived the provisions of the contract requiring the moneys to be deposited by the defendant in his own name as agent of the plaintiff; ninth, that plaintiff waived the provisions of the contract requiring

the defendant to account for or pay over the identical premiums received by him; and, tenth, that it was not shown that defendant converted moneys belonging to plaintiff or to which it was entitled, and the evidence that the agency director had power to draw checks on the funds makes the proof insufficient to support the action.

I am of the opinion that the four reports made to plaintiff by the defendant, dated February 6, 10, 14, and 16, 1905, show sufficiently that the defendant as agent received during the period mentioned in the complaint moneys of the plaintiff consisting of insurance premiums amounting in the aggregate to $15,615.36, of which, after deducting disbursements made by defendant and ratified by plaintiff, a balance remained of $5,486.31, to which the fiduciary responsibility still clung as well as to the original amounts received. While the moneys received by the defendant were not deposited in the precise manner provided by the contract, they were nevertheless made the subject of a separate deposit in a bank approved by the plaintiff in the name of the defendant as "general manager," and the checks drawn against such deposits showed upon their face the interest therein of the plaintiff; nor does the fact that the defendant's brother had the power to draw upon such deposits in the capacity of "director" affect the case any more than if the deposit had been of cash or currency in a box or safe to which said brother had a right of access given him by the defendant. Drafts, whether made by the defendant or his brother, were made only for the purpose of plaintiff's business, and the deposit was maintained for plaintiff's business exclusively. While the plaintiff waived the provisions of the contract requiring weekly remittances, the fact that remittances had been made with more or less regularity and all, so far as appears, by drafts against these special deposits, such waiver does not affect the fiduciary relationship of the defendant any more than the same could have been affected if the contract had in terms permitted the defendant to remit at his discretion either weekly, monthly, or at irregular intervals. His obligation and legal status was fixed by the manner in which he received the moneys, and by the fact that he was obliged to remit when requested. His refusal to pay over the balance constituted a conversion.

Section 38 of the New York insurance law provides as follows:

"Every person appointed or acting in this state as agent of any insurance corporation, who receives or collects any moneys as such agent, shall be responsible in a trust or fiduciary capacity to such corporation therefor."

The plaintiff is a New York corporation, and, although the original contract appointing the defendant its agent does not show upon its face where it was executed, nor is there any evidence of the place of execution, I think it can be presumed that it was executed at least by the plaintiff within the state of New York, and as it in terms appoints the defendant general agent of the plaintiff, it follows that he was then appointed in this state. But whether section 38 aforesaid applies or not, the fiduciary relationship of the parties was fixed by the contract itself, and the defendant assumed in words a fiduciary responsibility. Section 549 of the Code provides a remedy, and,

where the court acquires jurisdiction of the person of the defendant by personal service within the state, plaintiff is entitled to avail itself of that remedy in an action to recover upon a tort specified in that section, whether such tort occurred in this state or elsewhere. Brown v. Ashbough, 40 How. Prac. 226. The acceptance of the checks by the plaintiff did not operate as a waiver of its right to arrest the defendant, nor convert its claim into one of simple debt. The checks were simply orders upon plaintiff's own funds deposited in bank to the credit of defendant as its general manager, and payment of these orders was stopped by the drawer. The plaintiff is entitled to judgment for the sum of $5,486.31, with interest from March 3, 1905.

Judgment for plaintiff.