## WM. A. AGARD v. PEOPLES NATIONAL BANK OF SHAKOPEE AND ANOTHER.[1]

January 7, 1927.

No. 25,577.

**Bank not allowed to offset against agent's matured notes money of plaintiff deposited by his agent in latter's name.**

His agent deposited plaintiff's money to his own credit in the defendant bank which, without otherwise changing its position upon the faith of the deposit or being prejudiced in any way, attempted to appropriate the deposit by offsetting it against matured notes of the agent, a depositor. Judgment for plaintiff affirmed.

Agency, 2 C. J. p. 877 n. 52.

Defendant bank appealed from a judgment of the district court for Scott county, Tifft, J. Affirmed.

*Joseph J. Moriarty,* for appellant.

*Thompson, Loth & Lowe* and *L. H. Ostrander,* for respondent.

STONE, J.

Action to impress a trust for the benefit of plaintiff upon funds in possession of defendant, Peoples National Bank of Shakopee. After a decision for plaintiff the bank appeals from the judgment.

For many years the late Charles A. Lindbergh was a resident of Little Falls. Apparently he occasionally negotiated and sold farm loans. Plaintiff had purchased one from him. May 2, 1924, the mortgagor called at Mr. Lindbergh's Little Falls office and left with the person in charge, one Bolander, upwards of $2,000 in payment of the mortgage debt. Note, mortgage and satisfaction, the latter executed by plaintiff, had been placed by him with Lindbergh in anticipation of the payment and were all delivered to the mortgagor in exchange for his money. Bolander forthwith remitted the money

[1]Reported in 211 N. W. 825.

by a bank draft in favor of Lindbergh to the latter's office in Minneapolis. Lindbergh himself during all this time was confined in a hospital at Rochester with the ailment which soon was to result fatally. His Minneapolis office was in charge of an agent who knew that the money belonged to plaintiff. May 5th she indorsed with Lindbergh's name the draft which had come from Little Falls and deposited it in a Minneapolis bank for the credit of defendant, Peoples National Bank of Shakopee, herein called the bank for convenience. Mr. Lindbergh had an account with the latter and was forthwith credited with the deposit. He died May 25, 1924. His estate is insolvent. August 12, 1924, the bank attempted to appropriate the Lindbergh credit balance, which included plaintiff's money, as an offset on certain notes which it held against the deceased, all of them antedating the deposit of plaintiff's money and all past due at that time.

Again we are dealing with one of those vexed questions concerning which courts of last resort are in rather emphatic disagreement. It is said that this court has adopted the minority view, the "Federal" or "equitable" rule, so-called. 5 Minn. L. R. 471, citing Douglas v. First Nat. Bank of Hastings, 17 Minn. 18 (35); Third Nat. Bank of St. Paul v. Stillwater Gas Co. 36 Minn. 75, 30 N. W. 440; Platts v. Metropolitan Nat. Bank of Mpls. 130 Minn. 219, 153 N. W. 514. To whatever extent our former decisions may have committed us, we have given the problem a thorough reinvestigation, with a view to choosing anew that side of the issue which seems best supported by reason.

The bank did not change its position nor suffer detriment on the faith of the deposit in Lindbergh's name of plaintiff's money. So it has no equity superior to that of plaintiff, there being no anomalous and dominant quality in the banker's right of offset. The argument contra is put upon the currency of negotiable paper, and the "ancient foundation that money has no earmarks and therefore when honestly taken can be kept." What is meant is that where money has been honestly received, for a consideration and without notice, in the independent right of the taker himself, as in payment

of a debt, it may be kept. But the same author goes on to say that "Modern jurisprudence is assailing this rule. The truth is recognized that money has no more sacredness than other kinds of property, and that the true owner ought under many conditions to recover his own, especially when the receiver would not be in a worse state than he would have been had it not been paid to him." Bolles, Modern Law of Banking, 748.

But, while money has no more sanctity than any other property and not as much as some, it has and must continue to have a currency, a fluidity, that is denied other property. That quality must continue or it will cease to be money. But allowing fully the premise, building even on this "ancient foundation" of no earmarks, how can it follow that a bank, more than anyone else, can by its own act, unaided by superior equity, appropriate the money of another which happens quite by chance and temporarily to have been placed in its control? Here it was intended to be merely the conduit of that money on its way to the rightful owner. The final remittance was prevented, the record shows, because at the time being Mr. Lindbergh was incapacitated for business and remained so to the end.

What has happened to plaintiff's right to his money? Nothing but the unilateral act of the bank in asserting a right of offset. But no equity attends that right, at least none superior to that of plaintiff. The bank has not changed its position on the faith of the deposit. It certainly did not accept Lindbergh as a depositor, nor loan him money, nor buy his notes, expecting payment out of any funds not his own.

The currency of money and commercial paper and the absence from the former of all earmarks have never, alone, procured their escape from equity's pursuit of trust property in the hands of those who, with notice or as volunteers or without consideration, have taken the property from the trustee. In such a case equity follows not only the original property but the proceeds if there has been a conversion into money. 3 Pomeroy, Eq. Jur. (3d ed.) § 1048. The doctrine predicated upon the currency of money, the lack of ear-

marks, still applies where the trustee himself effects the conversion and uses the money of his principal or cestui in payment of his own debt. Smith v. Crawford County State Bank, 99 Iowa, 282, 61 N. W. 378, 68 N. W. 690. But that is not this case. Here the trustee did not make the application to the debt of the bank. His intention was to pay plaintiff. It was the bank alone which made the seizure, taking advantage of the fortuitous circumstance that made it a depositary of the fund. There was not even the implication that might have arisen if Lindbergh's account had been overdrawn when the deposit was made. In such a case, the depositor himself authorizes the offset and uses another's funds to pay his own debt. Kimmel v. Bean, 68 Kan. 598, 75 Pac. 1118, 64 L. R. A. 785, 104 Am. St. 415.

We agree with the learned trial judge that the plaintiff should recover. His equity is so clearly superior. We have found no better reasoned decision in support of our conclusion than Shotwell v. Sioux Falls Sav. Bank, 34 S. D. 109, 147 N. W. 288, L. R. A. 1915A, 715. In fact, the argument above attempted is but an inferior condensation of the reasoning of the majority opinion by the late Judge Whiting. Among the authorities in accord are Bank of Metropolis v. New England Bank, 47 U. S. 212, 12 L. ed. 409; Wilson & Co. v. Smith, 3 How. 763, 11 L. ed. 820; Porter v. Roseman, 165 Ind. 255, 74 N. E. 1105, 112 Am. St. 222, 6 Ann. Cas. 718; and Cady v. South Omaha Nat. Bank, 46 Neb. 756, 65 N. W. 906. See also Burtnett v. First Nat. Bank of Corunna, 38 Mich. 630, wherein it was said:

"But we are not aware of any principle which will enable a depositary who has received from a trustee or agent a fund belonging in fact to the principal or beneficiary, to appropriate it by his sole act to his own debt held against the trustee or agent and thereupon to insist that his want of knowledge of the true ownership is sufficient to guard such inequitable appropriation and bar the real owner from pursuing the fund."

The weight of authority is probably the other way. Kimmel v. Bean, supra, is a leading case well supported by the authorities there cited. See also First Denton Nat. Bank v. Kenney, 116 Md.

24, 81 Atl. 227, Ann. Cas. 1913B, 1337; School District in Greenfield v. First Nat. Bank, 102 Mass. 174; Hatch v. Fourth Nat. Bank, 147 N. Y. 184, 41 N. E. 403.

Many of the other cases cited for appellant are distinguishable from the instant case in which, as already indicated, the depositor never expressly or by implication authorized the application of the deposit to his own debt to the bank. That would have been the case if he had been overdrawn at the time of the deposit, for then it would have appeared that he himself intended to apply the deposit on the overdraft. This record expressly negatives any such intention. It shows on the contrary that it was Mr. Lindbergh's intention, or at least that of his agents handling the matter, to have the money turned over to plaintiff, its rightful owner. It is not at all the case of the use by an agent or trustee of the funds of his principal or cestui to pay his own debt. So it does not bring into play the obvious objections to permitting "in every case of the payment of a debt an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired." Such a procedure, as remarked in Hatch v. Fourth Nat. Bank, supra, would "disorganize all business operations and entail an amount of risk and uncertainty" to which commerce should not be subjected.

The opinion in Smith v. Des Moines Nat. Bank, 107 Iowa, 620, 629, 78 N. W. 238, 241, is thus qualified: "Had the bank in this case simply relied upon its lien on the deposit, or had it treated it simply as security for the note of the investment company, which was a prior and antecedent debt, it may be that it should not be treated as a bona fide holder of the deposit. But the evidence shows that it canceled and surrendered the note with the final assent of the investment company, and without notice of plaintiff's rights." If in the instant case the bank canceled and surrendered the Lindbergh notes it was without prejudice to its rights thereon. In Wood v. Boylston Nat. Bank, 129 Mass. 358, 37 Am. Rep. 366, it was pretty clear that the bank had changed its position by the offset. Recovery was not attempted against it for over a year, the bank in the meantime having made settlement with the assignees of the depositor

who had become insolvent. But the decision in support of the offset was finally put mainly upon the absence of notice to the bank that anyone other than the depositor was interested.

Mr. Lindbergh, agent of plaintiff and depositor of the bank, never having done anything which expressly or by implication indicated his intention to pay his debt with plaintiff's funds, and the attempted application having been made solely by the unilateral act of the bank, upon outstanding notes rather than upon an overdraft, we think that plaintiff's equity is superior and must prevail. The judgment in his favor should be affirmed.

So ordered.