## FIRST NAT. BANK OF CHICAGO v. NEWHOUSE.

(Circuit Court of Appeals, Seventh Circuit. January 25, 1927.)

No. 3818.

1. **Election of remedies** ⊂⊃7(3)—**Substituted trustee's filing of claim against receiver of former trustee for payments on trust deed did not preclude action against bank appropriating money.**

Where money paid on trust deed was appropriated by bank in payment of debt of insolvent trustee, substituted trustee's action in filing claim against receiver for insolvent trustee was not such election of remedies as would preclude right to sue bank for amount claimed.

2. **Banks and banking** ⊂⊃154(8)—**Evidence held to show that bank's application of payments on trust deed to trustee's debt was with knowledge of trust character of payment.**

Evidence *held* to show that appropriation by bank of payments on trust deed for payment of indebtedness of insolvent trustee in accordance with contract was not made until after full knowledge of trust character of funds.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by W. O. Newhouse, trustee, against the First National Bank of Chicago. Decree for complainant (13 F.[2d] 887), and defendant appeals. Affirmed.

John Nash Ott, of Chicago, Ill., for appellant.

W. H. Haight, of Chicago, Ill., for appellee.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. Appellee, called plaintiff, as successor in trust to Gold-Staback Company, called Company, was given a decree against appellant, called defendant, for trust funds, placed by the Company in defendant's bank in a general checking account, and appropriated by defendant in payment of the Company's notes, when the Company became insolvent.

The Company, at Minneapolis, had long

done a loan business. It owed defendant, at the time of the appropriation, $150,000, evidenced by notes which provided: "In case of the insolvency of the undersigned, any indebtedness due from the holder hereof to the undersigned may be appropriated and applied hereon at any time, as well before as after the maturity hereof." The Company lent to a land company $45,000, due November 15, 1921, secured by a trust deed to the Company, as trustee.

On November 7, 1921, Austin Bros., purchasers of the land, paid to the Company pursuant to the provisions of article X[1] of the trust deed, by means of three checks, $22,053.75, for the purpose of paying, first, $21,000 in bonds bearing the lowest serial numbers; second, interest thereon; and, third, a premium of 1 per cent. One of the checks, for $20,087.70, was sent to defendant, and placed by it in the Company's checking account on November 10, 1921. That is the money here in question. The balance of the Austin payment, $1,966.05 was not paid by the Company to anybody.

A letter of November 10, 1921, calling a meeting of the Company's creditors for November 15th, reached defendant on Saturday, November 12th, and defendant wired the Company that day: "Will attend conference, but expect you to leave balance intact until after conference."

On Monday, the 14th, the Company replied: "Have issued no checks since receipt of your telegram of November 12th and will issue none until after to-morrow's conference as you request. However, we will expect you to honor checks issued before your request was received."

That night Essroger, a vice president of defendant, went to Minneapolis and attended the conference on the 15th, where he learned of the Company's insolvency and of the trust character of the fund in question. He returned to Chicago on the 16th and the appropriation of the Company's balance was first made on defendant's books.

This suit was commenced in 1924, and in the fall of 1923 plaintiff filed a claim for the amount of the Austin payment against the estate of the Company being administered by a receiver appointed December 22, 1921, in the Minnesota state court. The claim was there allowed and dividends paid thereon. The amount of those dividends, plus a sum that it was agreed would be thereafter received, was deducted in the decree from the amount of the check appropriated.

Defendant makes three contentions: (a) That in filing his claim against the receiver, plaintiff lost any right to sue defendant; (b) that the appropriation was made before knowledge of the trust character of the fund; (c) that there was no trust fund.

The rule as to election of remedies is thus stated in Birdsell Mfg. Co. v. Oglevee, 187 Ill. 149, 152, 58 N. E. 231, 232: "A man may not take contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one with knowledge, or the means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and selecting again."

[1] There is no such situation here. The Company received the Austin money, kept a part of it and put a part of it in its account in defendant's bank. Defendant appropriated the part received by it on the Company's debt to the defendant, so that money belonging to plaintiff was used for the benefit of the Company and of defendant. The Company benefited thereby to the full amount of the payment and defendant to the amount of the check. Both owed and both should pay until there is full satisfaction, but not in excess of the amount each benefited. Filing the claim with the receiver directly benefited defendant.

There is another reason why filing the claim and suing defendant were not inconsistent. Defendant did not get the whole of the trust fund. Part was kept by the Company, and there certainly was a right to file a claim for that amount. The fact that the claim was filed for more than $1,966.05 and that defendant received credit for all divi-

---

[1] Whenever this mortgage or trust deed is in good standing and no default of any character exists, the mortgagee and trustee, its successors or assigns, shall, upon written request of the mortgagor, its successors or assigns, and upon payment to the mortgagee and trustee, its successors or assigns, of an amount of money equal to twenty-five hundred ($2,500.00) dollars per quarter section of 160 acres of the remainder of the lands herein described, which it desires released, together with interest on the sum so paid to the due date of the next ensuing interest coupon and a premium of 1 per cent. on the principal amount so paid, execute partial releases, releasing tracts of not less than 160 acres of the land herein described from the lien of this mortgage or trust deed. Any moneys received under this article for partial releases shall be applied by the mortgagee and trustee, its successors and assigns, upon the payment and retirement of the lowest numerical bonds on the next ensuing interest date.

dends received by plaintiff, when it was not entitled to so much, cannot form the basis of a complaint by defendant.

[2] There is some contradiction in the evidence as to what was said by Essroger at Minneapolis, on November 15th, when told that the check represented trust funds. Essroger says he said it was too late, as the money had already been appropriated. Others testified that he said he would appropriate it, if he had the right to do so. But the whole evidence shows that when Essroger, on November 12th, received the call to the creditors' meeting, his assistant vice president saw the bookkeeper in charge of the Company's account and instructed the bookkeeper to refer all checks to division A, Essroger's division, and that was done. The assistant vice president thereafter examined all such checks. There were none postdating defendant's telegram of the 12th, supra, and so all were O. K.'d and paid.

None of the defendant's notes was due. The provision in the notes, above quoted, merely permitted defendant to appropriate its indebtedness to the Company in case of insolvency. There was no automatic appropriation. Defendant's first knowledge of insolvency was through Essroger at Minneapolis on November 15th, so that defendant had no knowledge upon which to base an appropriation before that date. Essroger claims that when he learned of the insolvency on the morning of the 15th, Mr. Latta told him that the Northwestern Bank was going to apply their balance that morning and suggested that the defendant do the same. Mr. Decker, of that bank, said that he was going to telephone Mr. Wetmore, president of defendant in Chicago, and tell him that the Northwestern Bank was going to apply their balance, and Essroger says he said to him, "Will you say that to Mr. Wetmore and suggest that we do likewise?" Decker afterwards reported to him that he, Decker, had complied with Essroger's request, and that Mr. Wetmore said that he was going to apply the Company's balance. Anderson, Essroger's assistant, said that Wetmore came to his desk on the 15th and said something about the Company's account, but what Wetmore said does not appear.

The fact that Decker suggested to Wetmore that defendant apply the Company's balance clearly indicates that at that time there had been no application. Whatever Decker told Wetmore, and whatever Wetmore may have said to Essroger's assistant, amounts to nothing, because Wetmore did nothing, and clearly there was no appropriation of the account at that time.

The evidence shows that before Essroger left Minneapolis he learned all about the trust character of the fund. If he said, as he claims, that the information came too late, because the appropriation had already been made, he must have made that statement on the assumption of action by Mr. Wetmore, which never took place. If he said what the other witnesses say he said, not that it had been appropriated, but that he would appropriate it, if he had the right to do so, he made a statement which seems to agree with all the facts in the case. We are of opinion that the evidence shows that there was no appropriation by defendant until the 16th of November, the day after Essroger had full knowledge of the trust character of the funds.

Whether, without notice, there could, under like circumstances, be any lawful appropriation of the money, we do not decide; but it seems quite clear that, as the defendant had full notice of the trust character of the fund, there could be no lawful appropriation.

It seems hardly worth while to discuss the contention that there was no trust fund. The contention is based wholly upon the proposition that article X, supra, does not mean that at the maturity of the whole debt a payment may be made of a part thereof in the manner and under the circumstances provided in that article. Whether that is true we deem immaterial because: (a) The money was paid and a release of the land demanded a week before the maturity; (b) defendant asserts that during the five years subsequent to that payment no other payment has been made on the indebtedness. The evident intention of the Austins was to pay it under and in accordance with the provisions of the trust deed. All of the bondholders, including those who were to receive the money paid as well as those who received nothing, have acquiesced in the transaction as one done under the provisions of the trust deed. Their security has been released in accordance with the provision of article X. Defendant is without right to make complaint.

Decree affirmed.