## TWIN CITY FIRE INS. CO. v. GREEN.

No. 13827.

United States Court of Appeals
Eighth Circuit.

Aug. 11, 1949.
Rehearing Denied Nov. 16, 1949.

See 177 F.2d 626.

J. H. Cunningham, Jr., St. Louis, Mo. (Willson, Cunningham & McClellan, and Richard D. Gunn, St. Louis, Mo. on the brief), for appellant.

Oliver T. Remmers, St. Louis, Mo., for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The primary question before us is whether fire insurance premiums which (1) had been collected by Donald E. Chilcote as general agent for Missouri of Twin City Fire Insurance Company, or (2) had been collected by local agents of Twin City Fire, appointed by Chilcote, but for which they had not remitted, could be claimed by Twin City Fire in the situation involved to constitute trust funds in its favor. There are some subsidiary questions also, which will be referred to later.

The controversy is between Twin City Fire and the trustee of Chilcote and Company, Inc., a debtor corporation in reorganization under Chapter X of the Bankruptcy Act, as amended, 11 U.S.C.A. § 501 et seq.

Chilcote was president and principal stockholder of the debtor corporation and after his appointment as general agent by Twin City Fire he apparently began operating his insurance business through it, including the incidents of collecting premiums and making remittances to the several insurance companies which he represented. The trustee of the debtor corporation thus had come to have possession of premiums (i.e. such part of them as remained) which had been collected on Twin City Fire's policies under Chilcote's status as general agent. The trustee asserted that these funds constituted part of the general assets of the debtor-corporation's estate. He further insisted that the premiums collected by the local agents, for which they had not remitted, were similarly entitled to come into his hands as general assets of the debtor corporation.

He premised his position upon the contentions that Chilcote had transferred his interest in his general agent's contract and in his set-up of local agents to the debtor corporation, thus making it the owner of the "agency plant;" that Chilcote as general agent had had the right to have the premiums on all policies written by himself and his local agents come into his hands, and the debtor corporation as the owner and operator of Chilcote's agency plant was entitled to the same privilege; that the accounting relationship between Chilcote and Twin City Fire, under their contract and their course of dealing, for payment of the premiums on all insurance written by him or by his local agents, had been that of debtor and creditor and not one of fiduciary responsibility; and that in its accountability to Twin City Fire for the premiums coming into its hands through the operation of the agency plant, the debtor corporation (and hence too its trustee) was entitled to enjoy the same status that Chilcote had had.

Chilcote of course could not make an assignment to the debtor corporation of his appointment by Twin City Fire and his license from the State of Missouri, as such. And the State of Missouri had not licensed the corporation to act as an insurance agent. Nor was Twin City Fire shown to have ever entered into a contract of any nature with the debtor corporation. As a matter of fact, Twin City Fire claimed that it had not even known that the debtor corporation had any connection whatever with its affairs, but that it always supposed that Chilcote and Company was simply a trade name used by Chilcote, inasmuch as its contract with him ran to him personally, "doing business as Chilcote and Company."

The issue which is involved arose in the District Court on an application by Twin City Fire in the reorganization proceeding for an order against the trustee,

in effect declaring that the premiums collected by Chilcote as general agent and those collected by the local agents for which remittance had not been made constituted trust funds in favor of Twin City Fire as against the trustee, and directing the trustee not to interfere in any way with Twin City Fire's efforts to obtain possession of such funds.

The situation had become intensified by the fact that the State of Missouri had suspended Chilcote's license as insurance agent about three weeks before the institution of the corporate reorganization proceeding and that Twin City Fire had thereupon terminated his contract as general agent. Chilcote had for some time been heavily delinquent to the various companies that he represented. Thus he owed Twin City Fire approximately $31,000. The local agents had continued to write policies in Twin City Fire, and the trustee of the debtor corporation had notified them that the premiums on this as well as on all prior business had to be paid to him. He took the position, as indicated above, that all of such money should go into the general assets of the debtor corporation and be shared by its creditors on a pro rata basis.

The District Court denied Twin City Fire's application and upheld the trustee's right to have the premiums on all policies, both those written before and those written after the termination of Chilcote's contract, come into the trustee's hands. The decree declared adjudicatively that the premiums on all policies written by Chilcote while his contract was in effect and on all those written by the local agents at any time down to the institution of the corporate reorganization proceeding were assets of the debtor-corporation's estate and that the only claim which Twin City Fire had against them was a right to share in them on a pro rata basis as a general creditor. As to premiums on policies written by the local agents after the filing of the reorganization proceeding, the court declared that these too were entitled to be collected by the trustee and pass through his hands, with a right to deduct such commission as Chilcote's contract had provided for and with an obligation to account to Twin City Fire only for the balance thereof.

On the status of insurance premiums generally as between a company and its agent, Mo.R.S.A. § 6018 provides that "Any person who shall be appointed, or who shall act as agent for any insurance company within this state, or who shall, as such agent, solicit applications, deliver policies or renewal receipts and collect premiums thereon, or who shall receive or collect moneys from any source or on any account whatsoever, as such agent, for any insurance company doing business in this state, such person shall be held responsible in a trust or fiduciary capacity to such company for any money so collected or received by him for such company."

This statute, as a direct expression of public policy, necessarily would be controlling in any insurance agency relationship in Missouri, unless a different measure of accountability has been established between the parties by a contract provision or by a course of dealing determinative of the specific situation. Here the contract did not of itself remove Chilcote's obligation to account from the standard of the statute. There was no language which either expressly or by necessary implication gave him the right, by obligation on the part of Twin City Fire, to have the use of the premiums collected, in financing his business or for other personal purposes. The provisions in the agreement, requiring him to forward statements and schedules to the company on or before the 20th day of each month covering the business done and to "pay in full all balances due, as shown by such statements, on or before ninety (90) days after the close of the month in which the business was written", cannot per se be said to import the intention to create a debtor and creditor relationship instead of a trust responsibility.

These conventional agency-contract provisions are not inharmonious with the statute, and without other indicative elements being involved in the situation they amount in legal face-significance simply to an allowance of time in which to make premium collections and to an implied guaranty on the part of the agent for such premiums as

he neglects or fails to collect "on or before ninety (90) days" from the issuance of the policy. This collateral obligation of the agent to pay for any premiums which he has made the subject of a longer credit-extension or as to which he has for other reason failed in performing his duty to collect would not as a matter of law affect his accountability status under the statute for such premiums as he had in fact collected.

Such has been the view taken of the relationship of the statute to similar contract provisions, in Northern Ins. Co. of New York v. Traders Gate City Nat. Bank, 239 Mo.App. 132, 186 S.W.2d 491, 496, where it was said: "The (agent) was permitted by the (company) to collect the premiums * * *, retain them until agreed dates of accounting, to deposit same in its own general bank account, to control said account, and to remit therefrom the net premiums to the (company). After collection and while deposited in the agent's general, private bank account, those net collections were trust funds, as between (the company) and the (agent). The relationship of the (agent) and the (company) in reference to said net premiums so collected and so held, deposited, and controlled, was that of trustee and cestui que trust, respectively, and not merely that of creditor and debtor. Although under the agency agreement the (agent) was allowed sixty days to remit premiums reported receivable in a given month [with the obligation, as shown by the opinion, to pay for those not so collected], and although it was (the company's) custom and the custom generally among insurance companies to permit the agent to deposit such collections in the agent's individual bank account and remit for same therefrom, nevertheless, the trust character of such net premiums belonging to (the company) remained the same, as between the (company) and the (agent)." Cf. also United States Fidelity & Guaranty Co. v. Sexton, 134 Ga. 56, 67 S.E. 649, 651; Washington Life Insurance Co. v. Scott, 57 Misc. 492, 110 N.Y.S. 49; Glerum v. Spencer, 251 Mich. 163, 231 N.W. 38.

■ In fact, even without such a special statutory provision as exists in Missouri, the law generally has recognized an insurance agent, charged with the duty of collecting premiums and not granted the right by his contract to use the funds personally, as having prima facie a fiduciary responsibility. See 16 Appleman, Insurance Law and Practice, § 8786, pages 224, 225; In re Mason Co., D.C.Conn., 254 F. 164.

■ But while, as held above, the provisions of Chilcote's contract cannot be said to have abrogated his fiduciary responsibility, there remains to be considered whether such a course of dealing had been permitted to develop between the parties as, without regard to the obligation of the contract, entitled the trial court to find that a debtor and creditor relationship had come to be established in respect to such premiums at least as Chilcote actually had collected. The evidence on this point is not as satisfactory as could be desired, because of its lack of full development (thus neither party called Chilcote as a witness), but the facts appearing and the inferences reasonably possible therefrom seem to us sufficient so that we cannot say, within Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., that the court's finding on this basis and to this extent is clearly erroneous.

That Twin City Fire had been permitting and was entirely willing to permit Chilcote to use in his business the premums which he collected, without a strict fiduciary accountability, while it was satisfied with his opérations, has substantial indication in the testimony of a vice-president of the company (made in answer to the query whether Chilcote under the contract would not be financing Twin City Fire's business) that, by virtue of the difference between the time when the local agents were to account and when Chilcote was to remit, the company was "financing" Chilcote's operations and not Chilcote the company. Further support exists also in the circumstances that the company had not assumed to enforce any fiduciary rights against the collections which Chilcote had been making, when his remittances were not regularly received, nor is its failure to have done so explained in the record, but it allowed Chilcote's indebtedness to mount

536

progressively and to reach a total of $31,-000.

On this evidence, and without any testimony to overcome its implications, the conclusion could not be said to be without sound support that the dealings between Twin City Fire and Chilcote in relation to the premiums which he had collected had come to rest on the level of payments by him on a running account and not an intended accounting for specific collections. In view of the status thus created, we cannot say that the trial court erred in holding that a trust could not be impressed upon such collections as Chilcote had made prior to the termination of his contract.

But the fact that Twin City Fire had permitted a debtor and creditor relationship to become established as the measure of accountability for the collections which Chilcote theretofore had made would not necessarily mean that the company was required to allow that status to continue as to future collections. As we have pointed out, the contract did not obligate Twin City Fire to deal with Chilcote on a debtor and creditor basis in the agency relationship, and the company's lack of fiduciary hold upon such premiums as had previously been collected was due simply to the status which had been allowed to be established with respect to these particular funds.

Under the terms of the contract, the company had the express right to "give instructions and directions in all matters connected with the said General Agency as far as relates to the business of said Company," and the agent in turn was specifically bound to "follow out all instructions of the said Company in every matter" connected with the company's business. This would mean, in so far as the contract was concerned, that the company could have notified Chilcote at any time during the agency relationship that his accountability for all premiums collected by him thereafter was to be on a regular fiduciary basis. Likewise, it would have been within the company's power under the contract to have elected at any time, if it chose to do so, to take over the handling of the collections from the local agents through its own field representatives. And no custom, usage or practice in the insurance field, of such a nature and stature, in relation to a general agent's contract, as to be able to affect the right to exercise this power under the contract, is shown by the record.

The result is that we must hold that the trial court erred in declaring that the company was without a fiduciary hold upon the premiums which had been collected by the local agents but for which they had not remitted—both those on the policies written prior to the termination of Chilcote's contract and those on the policies written between the time of the termination of the contract and the institution of the reorganization proceeding. On the present record, Mo.R.S.A. § 6018, supra, and the provisions of the contract between the parties would require the holding that as against the trustee these premiums were trust funds in the company's favor, to the extent of its financial interest in them as payments for particular policies, and that the trustee was not entitled to interfere with the company's enforcement of its rights to them.

As to such of these premiums as were for policies written before the termination of Chilcote's contract, a commission right necessarily existed in his favor under the contract. If Chilcote has vested this commission right in the debtor corporation, as the trustee asserts, the trial court as the reorganization tribunal is, of course, entitled to say whether it desires to have the company (if the latter is willing to do so) collect this part of the premium also from the local agents and account for it to the trustee, or whether it prefers to have the trustee separately collect his commission portion of the premiums from the local agents.

As to the policies written by the local agents between the time of the termination of Chilcote's contract and the institution of the reorganization proceeding, as well as those written by such agents after the filing of the reorganization petition, Chilcote's contract contains no provision requiring the payment of a commission to the general agent on any business written by the local agents after the rightful termination of the general agent's contract. It was the

trial court's view, however, that the local agents belonged to the debtor corporation's (previously Chilcote's) agency plant, and that, in accepting such business from the local agents, Twin City Fire was utilizing the agency plant and could not "reap the benefit of such utilization and * * * deny liability for commissions."

Other than the fact that Chilcote had selected the local agents, there is nothing in the record to indicate that they were in any way integrated into the debtor-corporation's "agency plant." Their contracts were not between Chilcote and themselves, but with Twin City Fire, and the contracts required them to render reports and make remittances to the "Company's office," which, of course, after the termination of Chilcote's contract, he could not claim that his own office or that of the debtor corporation was. If Twin City Fire has in any other way utilized the debtor-corporation's "agency plant," except to receive directly from the local agents the business which they have written, the record does not show it. There may exist in the insurance field such an accepted general recognition of a tie between a former general agent and those whom he has appointed as local agents, or such a special integration can perhaps be shown in fact to inhere in some particular situation, as might conceivably be found to impose upon an insurance company the implied obligation of paying a commission to a former general agent on business subsequently accepted from such local agents, on the theory that in legal effect the business had been tendered by the local agents upon that condition. But the present record contains nothing that would make such a concept anything but a theoretical one.

■ A few subsidiary questions remain to be considered. One of these arises out of the fact that Twin City Fire has apparently made some collections from local agents which the trustee claims include premiums for which the general agent had already paid the company out of his own funds. Premiums for which Twin City Fire had already been paid by the general agent would of course be funds in which it had no trust rights. And in the reorganization situation, the trial court could properly refuse on equitable principles, in view of the preference which it found would result, to allow Twin City Fire to offset these collected funds against Chilcote's indebtedness to it.[1] The same is true of the court's refusal to permit Twin City Fire to retain as a set-off the commissions due under the general agency contract, on premiums collected from the local agents on business written prior to the cancellation of Chilcote's contract. As to any premiums collected by the debtor-corporation or by the trustee since the cancellation of Chilcote's contract, the trustee would owe the duty of accounting to Twin City Fire on a fiduciary basis, unless evidence shall be produced on another hearing to warrant a different holding, not inconsistent, however, with the legal views expressed above.

The portion of the decree declaring that Twin City Fire does not have any fiduciary rights in the premiums collected by Chilcote or by the debtor corporation prior to the cancellation of Chilcote's contract is affirmed. The court's declaration as to the lack of the right of set-off asserted by Twin City Fire, as discussed above, is also affirmed. The decree in all other respects is reversed and the cause remanded.

Affirmed in part and reversed in part.

---

[1] As to the principles governing the right of set-off in reorganization proceedings, see Lowden v. Northwestern National Bank and Trust Co., 298 U.S. 160, 164, 165, 56 S.Ct. 696, 80 L.Ed. 1114; Id., 8 Cir., 84 F.2d 847, 853–855.