## A. A. MILNE v. CAPITAL TRUST & SAVINGS BANK OF ST. PAUL AND A. J. VEIGEL.[1]

January 21, 1927.

No. 25,813.

**When owner of special deposit in bank which becomes insolvent can claim only as general creditor.**

While money paid into a bank for the express purpose of discharging a mortgage debt may be, nothing else appearing, a special deposit, it ceases to be such where the mortgagee accepts and retains for over 20 days a cashier's check for the amount payable to his own order. The relation of debtor and creditor is thereby established and, the bank having become insolvent in the meantime, the payee of the check can claim only as a general creditor.

Banks and Banking, 7 C. J. p. 751 n. 75.

Defendants appealed from a judgment of the district court for Ramsey county, Olin B. Lewis, J. Reversed.

*Clifford L. Hilton,* Attorney General, *William H. Gurnee,* Assistant Attorney General, and *E. O. Wergedahl,* Special Attorney for commissioner of banks of the state of Minnesota, for appellants.

*John A. Burns* and *Kerr, Nelson, Burns & Mohan,* for respondent.

STONE, J.

In this action to recover as on a preferred claim certain money from an insolvent bank, there was a trial without a jury. After decision for plaintiff defendants appeal from the judgment. April 8,

[1]Reported in 211 N. W. 954.

1924, one Riehl paid to Capital Trust & Savings Bank of St. Paul $1,227.38, being the amount, principal and interest, · which he then owed on a mortgage loan held by plaintiff, then and now a resident of St. Paul. The payment was accompanied by a satisfaction ready for the signature of plaintiff as assignee of the mortgage. The bank commingled the money with its general funds but immediately sent a representative to plaintiff to procure the latter's signature to the satisfaction, and, if possible, his consent to the money's remaining with the bank for reinvestment. That consent was refused by plaintiff who demanded his money. Thereupon a "treasurer's check" of the bank was delivered to plaintiff. Inadvertently and because apparently of an extended absence from St. Paul, plaintiff did not get around to negotiating that check until May 3, 1924. When he offered it for deposit then at his own bank he was informed that the Capital Trust & Savings Bank had closed its doors that morning. Mr. Veigel, as superintendent of banks, was then in charge and has been ever since, and for that reason is joined as a defendant.

No more need be said to show that the payment to the bank was for a special and limited purpose. When received it constituted a special deposit by the payor and the bank thereby became a bailee or trustee of the money. Pierson v. Swift County Bank, 163 Minn. 344, 204 N. W. 31; Stein v. Kemp, 132 Minn. 44, 155 N. W. 1052. It is immaterial that the money was "indistinguishably mixed" with the general funds of the bank. Bishop v. Mahoney, 70 Minn. 238, 73 N. W. 6; Central Nat. Bank v. Conn. Mut. Life Ins. Co. 104 U. S. 54, 26 L. ed. 693.

But the case does not stop there. The treasurer's check was what is ordinarily termed a cashier's check. It was equivalent to a bill of exchange accepted or a demand promissory note made by the bank. 5 R. C. L. 528. It was plaintiff's privilege to refuse to permit the bank to reinvest the money for him and he did so. It was also his privilege to refuse to become its general creditor, but he did not do that. On the contrary he not only refrained from demanding his money in specie, but accepted and for a relatively long time held an evidence of general indebtedness. The situation would not have been

different if he had taken the bank's certificate of deposit or promissory note. Hence, while the payment for plaintiff's account was initially a special deposit, it speedily lost that character and plaintiff, in the manner indicated, has become a general rather than a special creditor. Upon the delivery to plaintiff of the treasurer's check, the bank ceased to be a trustee and became a simple debtor to plaintiff in the amount of the check. The latter was a simple contract for the payment of money generally and not one for the payment of any particular funds or money from any particular source. Peterson v. Grapser (Iowa) 118 N. W. 411, and Drinkall v. Movius State Bank, 11 N. D. 10, 88 N. W. 724, 57 L. R. A. 341, 95 Am. St. 693, have been cited on the controlling proposition. They are helpful but not decisive. The facts in each case were very different from those now before us. Stein v. Kemp, supra, is clearly distinguishable in that the escrow payment there in question was a special deposit to start with and remained so to the end, the owner of the money never having changed his position so as to become a general rather than a special creditor.

For our most recent discussion of the principles governing collection by banks of money belonging to others, see Blummer v. Scandinavian Am. State Bank, 169 Minn. 89, 210 N. W. 865; Eifel v. Veigel, 169 Minn. 281, 211 N. W. 332; and Hjelle v. Veigel, 169 Minn. 173, 210 N. W. 891.

Judgment reversed.