## MARY G. CAMPION v. VILLAGE OF GRACEVILLE AND OTHERS.[1]

November 7, 1930.

No. 28,116.

*D. F. Nordstrom* and *Carl J. Eastvold,* for appellants.
*F. L. & E. V. Cliff,* for respondent.

[1]Reported in 232 N. W. 917.

STONE, J.

Both defendant banks became insolvent December 14, 1926, and are in course of liquidation by defendant Veigel as commissioner of banks. Shortly before their insolvency there was an attempted consolidation, which for reasons not now important seems not to have been consummated. Plaintiff sues as treasurer of the village of Graceville to recover, as a special deposit, the moneys hereinafter referred to. She first demanded of the village council that the action be commenced on behalf of the village. That demand was not complied with, and the village was made a defendant. After a decision and order for judgment in favor of plaintiff and the village, defendant Veigel as commissioner of banks and the two banks appeal from an order denying their motion for a new trial. The involved deposit was made during the period of the supposed consolidation, and for convenience we shall discuss the case as though there were but one defendant.

■ Shortly before December 1, 1926, the village deposited with the bank the money, which may be called the sewer fund but which went into the bank as an ordinary deposit by the village to the credit of its general and open checking account. The bank was an authorized depository of the village. The deposit of the sewer fund did not create an overdeposit. There was nothing unlawful in the transaction, and the title to the money passed to the bank. It could do with it what it wished and in its own interest. The resulting relation was that of debtor and creditor, nothing more. There was no bailment. The determinative issue is ruled for defendant by Campion v. Big Stone County Bank, 177 Minn. 51, 224 N. W. 258, where a preference was denied on facts stronger for the claimant than those now presented. (That case had not been decided at the time this one was tried.)

■ The sewer fund was collected under L. 1915, p. 45, c. 35 (G. S. 1923, §§ 1880 to 1906, as amended, 1 Mason, 1927, id.) an act codifying our statutes authorizing cities of less than 10,000 and all villages and boroughs to establish and maintain general sewer systems. Section 15 (G. S. 1923 [1 Mason, 1927] § 1893) provides that all

moneys collected on sewer assessments "shall constitute a fund for the payment of the cost of the improvement in the district for which such assessment was made." There follow provisions for the issuance of sewer warrants to defray the cost of sewer construction and their payment out of the appropriate sewer fund.

Counsel for plaintiff are doubtless correct in saying that, as between the owners of the benefited property and the city, village, or borough which is made the custodian of the sewer fund pending the liquidation of the warrants, such moneys are trust funds, the municipality being the trustee and the warrant holders and assessed property owners the beneficiaries. Counsel may be right also in their conclusion of fact that "the security of the purchasers" of sewer warrants may be somewhat impaired and the interest of the property owners jeopardized by a decision that when such funds are deposited in a bank the resulting claim, in case of insolvency of the depository, is not preferred. But that decision must follow notwithstanding. The resulting disadvantages may be sufficient to control future legislative policy, but they cannot control judicial action as the law now stands.

There is some authority for the view that because at common law the British Crown had a preference over general creditors, the states of our union have succeeded to that right. Robinson v. Bank of Darien, 18 Ga. 65; note, 5 L.R.A. (N.S.) 889. That rule has not gained currency. It seems to carry too far the effects of our wholesale adoption of the common law at the creation of our state. The contrary opinion prevailed in Middlesex County v. State Bank, 29 N. J. Eq. 268, 272, affirmed, 30 N. J. Eq. 311. There it was suggested, most pertinently, that even the federal government, which as a creditor must possess as high a prerogative right "as any sovereignty could under a government republican in form," had never attempted an exercise of the prerogative of the English Crown but depended only on such right as congress had declared it should have. And Chancellor Kent was of the view that our states had no standing as preferred creditors other than that given by statute. 1 Kent, Com. 247, 248.

All public moneys are in a very real sense trust funds. But otherwise their ownership by government or any subdivision of it is inherently neither more absolute nor otherwise of higher quality than that of the individual of his private funds. It follows that in the absence of a statute declaring otherwise public funds lawfully deposited in a bank stand upon the same footing with and are entitled to no preference as against the claims of general creditors. Our statute (G. S. 1923 [1 Mason, 1927] § 106) gives a preference to the state but none to any municipality. City of Cloquet v. N. W. State Bank, 172 Minn. 324, 215 N. W. 174. With the right given and the duty imposed on public officials to require adequate security for all deposits of public funds, it is "only equitable" that the government "take the position of other creditors in the distribution of the assets of the bank in case of its failure" with insufficient security for public moneys on deposit. Cook County Nat. Bank v. U. S. 107 U. S. 445, 449, 2 S. Ct. 561, 27 L. ed. 537. See also 7 C. J. 633 and 749; 3 R. C. L. 555.

■ That the village was the trustee of it does not result in impressing a trust upon the sewer fund after it had gone into the bank lawfully as a general deposit. Trust funds of all kinds, public and private, are ordinarily deposited in banks to the credit of the trustee as such. But, such deposits being general, there being no restriction upon the use of the money by the bank, the resulting relation is the ordinary one of debtor and creditor. The money becomes the property of the bank, and it may do with it as it will. That proposition, so far as we are advised, has never been questioned. Never has it been held that the mere fact that the money is in the hands of the depositor as a trust fund results in the deposit's becoming a special one simply because it is made by a trustee rather than an individual in his own right. 3 R. C. L. 518. The knowledge of the depository that the deposit is of trust funds may, in a proper case, enable the cestui que trust to recover from the bank. But it is immaterial, void of effect, on the question of preference after the insolvency of the depository. Gray v. Elliott, 36 Wyo. 361, 255 P. 593, 53 A. L. R. 554.

The cases upon which plaintiff relies, among which are State ex rel. Donnelly v. Hobe, 106 Wis. 411, 82 N. W. 336; Allen v. City of Davenport, 107 Iowa, 90, 77 N. W. 532, hold only that funds raised by special assessment and by law dedicated to payment for a public improvement constitute trust funds in the hands of the municipality charged with the duty of collecting and disbursing them. Allen v. City of Davenport, 107 Iowa, 90, 77 N. W. 532, is typical. The decision was simply that such a fund was held in trust and could not be lawfully appropriated for the paving of streets other than the ones for the paving of which the money had been paid by the benefited property owners. There is neither authority nor valid reason for holding that simply because a municipality is charged with the duty of handling money as a separate fund and with a trust impressed upon it it cannot as custodian make a general deposit of the money in any bank authorized to act as a depository.

The order appealed from must be reversed and the case remanded with directions to amend the conclusions of law and order for judgment in accordance with the views expressed in this opinion.

So ordered.