JOHN LUITEN v. J. N. PEYTON AND ANOTHER.[1]

June 30, 1933.

No. 29,403.

[1]Reported in 249 N. W. 420.

*Thomas H. Hodgson,* for appellants.
*William O. McNelly,* for respondent.

*LORING, Justice.*

This was a suit to recover $1,460 and to have the same declared a preferred claim in the defendant's receivership of the Peoples State Bank of Glencoe. The plaintiff was clerk of the district court of McLeod county and as such received from the state of Minnesota a warrant for $2,060 as an award of damages in a highway proceeding. The money belonged to the heirs of Johan F. W. Wendt. February 14, 1931, the district judge made an order specifying the amount to be paid to each of the various heirs. Soon thereafter the plaintiff cashed the warrant at the Peoples State Bank of Glencoe and obtained $400 in cash and $1,660 in a cashier's check. The $400 in cash was paid to one of the heirs, and on June 11, 1931, the plaintiff surrendered the cashier's check and obtained $200 in cash for another heir. He then received a cashier's check for $1,460, which is the subject of this suit. June 26, 1931, the Glencoe bank was closed by the defendant Peyton, who when this suit was brought was administering its assets as commissioner of banks. The plaintiff sought to have his claim preferred as a special deposit and trust fund. The defendant Peyton rejected the preference, and this suit followed. The court made findings of fact and determined that it was agreed and understood between the bank and plaintiff when making the deposit that it was a special deposit and that a trust was thereby created which entitled the plaintiff to a preference

in the liquidation of the bank's assets. The defendants have appealed from the judgment entered pursuant to the court's order. At the time that the plaintiff cashed the warrant and obtained the $400 in money and the balance in a cashier's check he says that he told the cashier of the bank that the warrant constituted state highway money which he had to pay out to the heirs of the Wendt estate and that he wanted to have it entered as a special account. He did not want it mixed with his other funds in the bank. He says he again told the bank the same thing when he got the $200 and took the cashier's check here sued upon. The question presented by this appeal is whether or not there is evidence to sustain the court's finding that this transaction constituted a special deposit and created a trust fund for which plaintiff is entitled to a preference in the liquidation proceedings.

The fact that the money was public funds used for the payment of an award in condemnation proceedings gives no right to a preference. Campion v. Village of Graceville, 181 Minn. 446, 232 N. W. 917. The mere taking of the cashier's check would not constitute the deposit a special one nor create a trust fund. It would merely create the relationship of debtor and creditor between the bank and the clerk. Standard Oil Co. v. Veigel, 174 Minn. 500, 219 N. W. 863. The fact alone that the funds were trust funds in the hands of the clerk does not impress them with that character as between plaintiff and the bank when rightfully deposited with the bank's knowledge of their character. Mere knowledge on the bank's part that the depositor is a trustee of the fund does not make it a trustee. Campion v. Village of Graceville, 181 Minn. 446, 232 N. W. 917; Officer v. Officer, 120 Iowa, 389, 94 N. W. 947, 98 A. S. R. 365; Pethybridge v. First State Bank, 75 Mont. 173, 243 P. 569; Thompson v. Orchard State Bank, 76 Colo. 20, 227 P. 827, 37 A. L. R. 115, and cases cited in the annotation at page 120. The case turns on whether under the circumstances as explained to the cashier the conversation between plaintiff and the cashier impressed the transaction with the character of a special deposit and constituted it a trust fund.

Originally a special deposit was defined as a deposit "where the whole contract is that the thing deposited shall be safely kept, and that identical thing returned to the depositor." 1 Morse, Banks and Banking (6 ed.) § 183; but in this state apparently the special deposit may be mingled with other funds without changing the character of the deposit. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 786b. However, some relationship other than mere debtor and creditor must be created. A bailment or a trusteeship *ex maleficio* is sufficient.

If the bank, through its cashier, had promised plaintiff to pay out the money to the heirs as the court might direct, we would have no difficulty in concluding that there was a trust relationship. The authorities support that doctrine. Does the fact that the bank was to return the money to plaintiff for distribution by him to the heirs as required distinguish the case from the hypothetical situation stated? If plaintiff had taken the currency to the bank and left it for safe-keeping only, to be returned as he required it to pay the heirs, the bank would have become a bailee, and title to the money would not pass to the bank. Is not that in effect what plaintiff did here? He did and said everything necessary to create that situation except to arrange that the identical money would be returned to him. Under our decisions that is not necessary in order to create a special deposit. The language used, the circumstances disclosed, and the inferences properly drawn therefrom by the trial court justified it in finding an express creation of a special deposit to be devoted to a specific purpose and held separate by the bank to that end. The bank in effect was a bailee of the money, and as to this deposit the relation of debtor and creditor did not exist. The trust and the right to a preference followed the bailment. Stabbert v. Manahan, 163 Minn. 214, 203 N. W. 611; Stein v. Kemp, 132 Minn. 44, 155 N. W. 1052.

Milne v. Capital T. & S. Bank, 170 Minn. 66, 211 N. W. 954, is clearly to be distinguished from the case at bar. There the trust relationship had terminated, and plaintiff had accepted a cashier's check in lieu of cash. He voluntarily became a mere creditor.

Affirmed.

*STONE, Justice* (dissenting).

I cannot escape the conclusion that the cashier's check, a negotiable instrument and complete, unambiguous, written contract (the equivalent of a bill of exchange or demand promissory note, 5 R. C. L. 528; Milne v. Capital T. & S. Bank, 170 Minn. 66, 211 N. W. 954) so fixed the rights of the parties thereto, plaintiff and the bank, that the former became a general creditor of the latter and nothing more.

"It is well settled," or was until this decision unsettled it, "that the purchase of a * * * cashier's check * * * creates the relation of debtor and creditor between the bank and the purchaser, and that the purchaser is not entitled to a preference over other general creditors of the bank from which it was purchased." Standard Oil Co. v. Veigel, 174 Minn. 500, 503, 219 N. W. 863, 864.

If that view of the check is correct (the opinion of the majority does not say, and cannot correctly say, otherwise) the resulting contract obligations could not be changed. Particularly they could not be enlarged as against the bank's written contract to pay generally, not to return specially. So no amount of testimony of oral agreements or added conditions, opposed to the written contract, can give any foothold for the finding of fact made below and here sustained and considered determinative. Others must explain how this decision can be reconciled with Milne v. Capital T. & S. Bank, 170 Minn. 66, 211 N. W. 954; Standard Oil Co. v. Veigel, 174 Minn. 500, 219 N. W. 863; and Campion v. Big Stone County Bank, 177 Minn. 51, 224 N. W. 258. I cannot.

*DIBELL, Justice* (dissenting).

I concur in the result reached by Mr. Justice Stone.