VINING CO-OPERATIVE CREAMERY ASSOCIATION v.
J. N. PEYTON AND ANOTHER.[1]

June 15, 1934.

No. 29,909.

[1]Reported in 255 N. W. 252.

*Frankberg, Berghuis & Frankberg,* for appellants.
*Owen V. Thompson* and *Dell & Rosengren,* for respondent.

*HOLT, Justice.*

Defendants appeal from a judgment adjudging the claim of plaintiff a preferred claim in the matter of the liquidation of Lund's State Bank of Vining.

Andrew T. Lund for more than ten years was president of Lund's State Bank of Vining, performing also the duties of cashier. During the same time he was secretary-treasurer of plaintiff. On the 19th of January, 1931, plaintiff had a balance in its checking account at the bank of $1,827.98. For some time prior to that date plaintiff had been accustomed to receive advances from its customer the Land O'Lakes Creamery Association; but plaintiff's board of directors were then informed that these would cease. Lund told the others that unless $1,500 could be advanced by the customer mentioned to meet the pay-roll "they would have to close." We understand the closing refers to the bank. With the assistance of two of the directors, Lund obtained $1,500 from the Land O'Lakes Creamery Association, on the assurance that such advances would not be used for other purposes than to meet the pay-roll. The pay-roll meant paying for the cream purchased from the farmers as well as the current expenses of operating the creamery. At the annual meeting of plaintiff, held February 2, 1931, the court found that this resolution was adopted:

"Moved by J. E. Jacobson, seconded by O. E. Herbranson that the secretary-treasurer shall not draw more advance drafts on butter shipped to Land O'Lakes than an amount equal to the advances advanced to the creamery patrons from time to time.

"That the creamery account with the Lund State Bank shall be a special account to take care of the pay-roll of the creamery and for no other purpose. On vote by acclamation the above resolution was unanimously passed."

70

We have to accept this finding as correct, although no such resolution is found in the minutes, and it was not reduced to writing when adopted, but was formulated with the assistance of an attorney on October 7, 1931, a few months after the bank was closed. On February 2, 1931, the balance in plaintiff's checking account was $734.82. On July 28, 1931, when the bank closed, it was $1,962.44, for which sum with interest judgment was directed in favor of plaintiff. In addition to finding the resolution above quoted, the court found that it was intended to cover all of the deposits of plaintiff in the bank at the time, viz.: $734.82, and all deposits that should thereafter be made, and that it was understood between Lund and the plaintiff's board of directors at that time that all such funds should be kept separate from other funds of the bank; that Lund expressly agreed to the arrangement, but instead of complying with the resolution and agreement Lund carried such funds in the same account of said bank as before and continued to make deposits and check thereon in the same manner as theretofore.

The defendants challenge the findings in several respects. But we do not deem it necessary to decide whether the evidence sustains all of them, for the basis for finding a special deposit is the resolution of February 2, 1931, and we are clear that such resolution and Lund's agreement to abide thereby, followed by what was actually done, as found by the court, did not make the deposit of plaintiff a special deposit. The first sentence of the resolution has no bearing on the question of a special deposit. Nor is there any claim that Lund or the bank did not conform thereto. The second sentence: "That the creamery account with the Lund State Bank shall be a special account to take care of the pay-roll of the creamery and for no other purpose," does not make the account a special deposit. There is no finding that the deposits of plaintiff were used for any other purpose than taking care of the "pay-roll." In fact, the evidence is positive that all that was checked out was for that purpose. A special account in a bank is not a special deposit. The agreement pursuant to the resolution, which the court finds, could not in the nature of things constitute a special deposit or bailment. Plaintiff, a creamery in a small country town, was no doubt the

bank's best customer. It made 41 deposits between January 19, 1931, and the closing of the bank July 28, 1931, amounting to $23,842.64, and paid out by 1,594 checks $23,808.18. The deposits were from the current receipts of a plant in daily operation, and upon this account checks were to be drawn to pay for the cream delivered, all the material going into the butter produced, such as tubs, salt, etc., the help employed, and expense of marketing. It cannot be thought possible that the parties intended these deposits should be kept separate and apart from other deposits in the bank. No doubt most thereof were in checks or drafts so that they could not be used in kind to pay for the material or help in operating the creamery. The court found that the deposit account remained the same on the books of the bank after January 19, 1931, as before, and it was checked on in the same manner after that date as before. By the resolution and agreement found the account is farther removed from the character of a special deposit than was the account involved in Campion v. Big Stone County Bank, 177 Minn. 51, 224 N. W. 258, and Campion v. Village of Graceville, 181 Minn. 446, 232 N. W. 917. The deposits made by plaintiff were not intended as bailments but, like the general deposits in a bank, to be checked out by the depositor. In such cases the deposits when made become the property of the bank, and it becomes the debtor of the depositor. Other cases in point are Hjelle v. Veigel, 169 Minn. 173, 210 N. W. 891; Hogenson v. Farmers & Citizens State Bank, 180 Minn. 342, 230 N. W. 817.

Plaintiff relies on Blummer v. Scandinavian Am. State Bank, 169 Minn. 89, 210 N. W. 865; Village of Monticello v. Citizens State Bank, 180 Minn. 418, 230 N. W. 889; Hurley v. Markville State Bank, 185 Minn. 56, 239 N. W. 769; Luiten v. Peyton, 189 Minn. 365, 249 N. W. 420, 421. In the Blummer case, 169 Minn. 89, 210 N. W. 865, $1,500 was left with the bank for the specific purpose of paying a mortgage that would fall due later. In the Village of Monticello case, 180 Minn. 418, 230 N. W. 889, the bank undertook to accept and care for a trust fund for a designated purpose. In the Hurley case, 185 Minn. 56, 239 N. W. 769, the plaintiff and the bank agreed to establish and did establish on the books of the bank a special de-

posit of trust funds held by plaintiff as receiver of an insolvent corporation to be kept intact to pay dividends to be declared to the creditors. The Luiten case, 189 Minn. 365, 368, 249 N. W. 420, was by a divided court, holding that under the facts the "bank in effect was a bailee of the money, and as to this deposit the relation of debtor and creditor did not exist." If such an arrangement with regard to a current deposit and checking account of a business concern and its bank may convert a general deposit into a special deposit, it is readily seen how forehanded large depositors in banks may, in case of their closing, obtain preferences and exhaust the assets to the detriment of other depositors who have kept and checked on deposit accounts in precisely the same manner as the favored ones.

We need not consider the question of augmentation of the bank's assets, for we are satisfied that plaintiff's deposits were general and not special.

The judgment is reversed with directions to amend the findings and enter judgment in favor of defendants, without prejudice to plaintiff's asserting a claim as a general creditor of the insolvent bank.

