## MINNEAPOLIS FIRE & MARINE INSURANCE COMPANY v. BANK OF DAWSON AND ANOTHER.[1]

December 7, 1934.

No. 30,059.

[1]Reported in 257 N. W. 510.

*Thomas E. Latimer*, for appellants.

*Best, Flanagan & Rogers*, for respondent.

STONE, JUSTICE.

In this action to have its demand declared a preferred claim against an insolvent bank, plaintiff (Minneapolis Fire & Marine Insurance Company) procured a favorable decision after trial to the court. Defendants (Bank of Dawson and J. N. Peyton, as commissioner of banks) appeal from the order denying their motion for amended findings or a new trial.

The defendant Bank of Dawson is in liquidation, having been taken over for that purpose by the commissioner of banks May 13, 1931. For a long time prior thereto the bank had been doing a general insurance business under the name of the "Bank of Dawson Insurance Agency." Individual officers of the bank were licensed by the insurers as the soliciting agents. The cashier of the bank, Mr. Gillott, had been thus licensed by plaintiff. April 27 a fire policy was issued, and the premium of $35 was collected by the bank May 7, 1931. The commission was $5.25, leaving $29.75 as the net premium due plaintiff. That sum had not been paid to it when the bank closed. The question is whether it should have been allowed as a preferred or a general claim. By the decision below, it is given preference upon the theory that the money was collected and held by the bank in trust for plaintiff.

The bank was not required to remit premiums promptly as collected. Remittances of the net premiums were made to the companies at the end of each month. As the premiums were paid to the bank they were entered as debits against the "insurance account," which was carried as a deposit account in the customers' ledger. When the net premiums were remitted to the insurers at or soon after the end of each month, they were charged to that account. The bank's commission was permitted to accumulate un-

til the end of each year, when it was transferred from the insurance account to earnings.

■ While an agency is not a trust, yet "if an agent is entrusted with the title to property for his principal, he is a trustee of that property." Restatement, Trusts, § 11, (f). But if the principal extends credit, generally, to the agent, the relationship disappears and is superseded by that of debtor and creditor. Hjelle v. Veigel, 169 Minn. 173, 210 N. W. 891.

■ That did not happen in this case. That an insurance agent is not required to remit net premium immediately upon collection does not show, nothing more appearing, that his principal, the insurer, has extended credit to him generally. Premiums frequently are not paid by the insured concurrently with the receipt of the policy. They are customarily given some credit by the issuing agents. The indulgence to the agent is primarily to permit him to accommodate himself to ordinary business usage with the insured and so that he may allow them a reasonable time for payment. The extension of time to the agent does not even suggest that he is thereby allowed to treat the money received for premiums as his own, except as to his commission. The net premium is the property of the insurer at the outset and remains so while it is in the agent's hands after collection and before remittance to the insurer.

That conclusion, applicable generally, is somewhat enforced here because the bank put the premiums into its "insurance account," thereby earmarking the fund, except for the bank's commissions, as the property of the insurer. It was differentiated from the general deposit accounts and labeled as a special one for an obvious purpose. We have simply a case where a fiduciary has collected money belonging to another; carried it into an account labeled for the appropriate special purpose; and is under the duty of accounting to the principal or beneficiary at stated intervals, so short, ordinary business usage considered, as to prevent the conclusion that there was any intention to extend credit generally.

The case is distinguished from Milne v. Capital T. & S. Bank, 170 Minn. 66, 211 N. W. 954, because there the owner of the fund accepted a cashier's check which he retained for over 20 days. In

consequence, he had relinquished his property right in the fund, which had been collected, and had accepted in lieu thereof the agent's mere general obligation to repay. Eifel v. Veigel, 169 Minn. 281, 287, 211 N. W. 332, approaches this case more nearly in that there "the bank was merely the agent of plaintiff to collect the note and remit the proceeds." Here the bank, in respect to the premium in question, was a mere collection agent without right to devote the net premiums to any purpose inconsistent with the right of the insurer as owner of the fund. The title to the net premiums collected did not pass to the bank. The latter did not have the right to use them as its own at all or for any purpose. Oak Grove Farmers' Mut. Ins. Co. v. Almena State Bank, 216 Wis. —, 256 N. W. 696.

Such cases as In re Receivership of St. Paul Home Co. 189 Minn. 566, 250 N. W. 451, are not helpful because they involve moneys uncollected by the agent but remaining due for premiums after his insolvency. Of course, in such cases, the uncollected premiums less the commissions belong to the insurers unless, perchance, the agent has already accounted for them notwithstanding that they have not been collected.

■ The rule that, if a trustee deposits his trust funds generally in a bank no preference can be allowed the beneficiary after the insolvency of the bank (Campion v. Village of Graceville, 181 Minn. 446, 232 N. W. 917, followed in Ottawa B. & T. Co. v. Crookston State Bank, 185 Minn. 22, 239 N. W. 666) does not apply here. That is because the bank itself was the trustee.

There has been much argument *pro* and *con* as to whether the conduct of the insurance agency was *ultra vires* the bank. That question we need not decide because, even if it be held that the bank did not have the charter power to become an insurance agent, it would still remain a trustee of premiums collected by it. The property in them, less the agent's commission, was that of the insurer. And that property right was not lost.

Such cases as this, where, after insolvency of a bank, a fund in its possession is impressed with a trust, are not in the same category with those where a going bank is denied the right of applying a deposit of trust funds to its own benefit. Where a trust fund is

deposited generally, the bank, with notice of the facts, cannot apply the deposit under its right of offset, in payment or reduction of the depositor's debt to it. National Bank v. Insurance Co. 104 U. S. 54, 26 L. ed. 693. That result is reached only by reason of the fact that the bank accepts the deposit with notice of the superior equity of the beneficiary or real owner of the fund. But where, as here, the bank itself is the trustee, its creditors, upon insolvency, have no equity superior, or even equal, to that of the real and sole owner of the fund.

Order affirmed.

