The AMERICAN NATIONAL BANK OF
SAINT PAUL, Appellant,

v.

NATIONAL INDEMNITY COMPANY
OF OMAHA, Appellee.

No. 15153.

United States Court of Appeals
Eighth Circuit.

May 11, 1955.

**514**

Milton H. Altman, St. Paul, Minn. (Lipschultz, Altman & Geraghty, St. Paul, Minn., on the brief), for appellant.

Sheldon J. Gensler, Minneapolis, Minn. (Irvin E. Schermer, Minneapolis, Minn., Daniel L. Gross, and Gross, Welch, Vinardi & Kauffman, Omaha, Neb., on the brief), for appellee.

Before SANBORN, JOHNSEN and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Plaintiff, a Nebraska insurance company, licensed and doing business in Minnesota, seeks by this action an accounting of funds in excess of three thousand dollars deposited in the defendant bank, a Minnesota national bank, by the Charles T. Auch Agency, Inc., an authorized agent of the plaintiff, which had written policies and collected premiums for it in the State of Minnesota.

The claim of plaintiff is that such premiums as were deposited in the account constituted trust funds and were not subject to defendant bank's right of set-off against the agency's debt to it. The bank's defense is that they were not trust funds and that the equities are in favor of defendant and that defendant did not have actual knowledge that the agency was committing a breach of any fiduciary obligation nor did it have knowledge of such facts that its action in paying checks of the agency to itself (the bank) amounted to bad faith, and that plaintiff has not been able to trace the funds into defendant bank.

The case was tried to the Court and resulted in a judgment in favor of plaintiff. 120 F.Supp. 713. Defendant appeals.

The agency entered into a written agreement with plaintiff pursuant to which it solicited and sold insurance for plaintiff and collected premiums thereon. Such premiums, less commissions, were to be forwarded to plaintiff within 40 days from the end of the month within which the insurance became effective. The agreement between plaintiff and the agency, insofar as it is pertinent herein, provided as follows:

*"All moneys paid by the policyholders to the agent, or to anyone representing him, shall be held by and chargeable to the agent as a fiduciary trust for and on behalf of the Company, and shall be paid over to the Company as hereinafter provided.* * * *"* (Emphasis supplied.)

"The agent agrees to pay to the Company all premiums accruing on insurance written under this agreement, whether or not collected by the agent from the assured * * * and guarantees to the Company earned premium on any such risks bound, whether collected or not.

"The agent shall furnish to the Company monthly, by the tenth day of the succeeding month (or at its option the Company may furnish to the agent) a statement of account covering transactions for each month, and the agent shall remit to the Company the net amount shown by such statement to be due the Company within forty days after the close of the month covered by said statement. * * * Above statements and remittances are to be sent to the Company at Ringwalt and Liesche, Agency, 532 Brandeis Theatre Building, Omaha, Nebraska."

The agency maintained but one general checking account in the defendant bank into which income and premiums were indiscriminately deposited. The

agency made remittances to plaintiff from this account and also paid its operating expense therefrom. It represented many other insurance companies to whom it also made remittances from the same account.

During the existence of the contract between plaintiff and the agency, the defendant bank agreed to extend to the agency credit of $100,000.00 on an arrangement whereby the agency would assign to the defendant bank deferred payment insurance premium contracts and give its demand note for the full amount borrowed. Collections were to be made on such contracts by the agency and were to be deposited as soon as they were received in a special collection account. The bank had a rule that it would not accept agency checks in payment of notes executed by it. Only the insured's checks on such deferred premium contracts as were assigned to the bank were to be deposited in the special collection account. This rule the bank violated in a number of instances by accepting the agency's checks instead of the insured's checks. The defendant bank would charge the special account at periodic intervals and would credit the agency borrowings with the amount of charge-offs.

In March, 1952, the agency began to default in payment of customers' money into the premium collection account of the defendant bank. The officers of the bank made such inquiry as they believed necessary. The arrangement was continued. On September 3, 1952, the bank credit to the agency was increased to $125,000.00, with the same terms and conditions as in the original loan agreement.

Plaintiff was unaware of the fact that the agency was commingling funds. It made no inquiry on that score. During the latter part of February and the first part of March, 1953, the bank, by reason of facts coming to its attention, became suspicious of the agency and as a result of another inquiry discovered that most of the collateral given to it as security for advances to the agency consisted of forged instruments. The bank then attempted to exercise its right of set-off against the entire balance in the agency account. It contends that the agency account was subject to its right to set-off under the terms of an agreement with the agency.

■■ The trial court allowed plaintiff to recover on four separate items and denied recovery on others. Evidence with respect to the four items on which recovery was allowed was disputed. This court, in its consideration of the appeal, however, must take that view of the evidence most favorable to sustaining the findings and conclusions of the trial court. All conflicts in the evidence must be resolved in favor of plaintiff, and plaintiff, as the prevailing party, is entitled to all favorable inferences that can reasonably be drawn from the proven facts. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720; Carter Carburetor Corp. v. Riley, 8 Cir., 186 F.2d 148, 150; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 439; Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 417, 418; Voss Bros. Mfg. Co. v. Voss, 8 Cir., 157 F.2d 263, 266; Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670, 674; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 138. We are of the opinion that the record fairly well sustains the findings and conclusions of the trial court with respect to the four items allowed and which are generalized as follows:

The first item of $2,761.42 was found to represent premiums belonging to plaintiff which were deposited by the agency in its account with the defendant bank after March 20, 1953, on which date there had been a specific notice from plaintiff to the defendant bank that the agency was depositing its premiums in the agency account.

The second item of $1,481.14 represented premiums belonging to the plaintiff which were a part of the bank balance of $8,390.98 in the agency account on March 12, 1953, at which date the bank had attempted to appropriate the entire amount of the deposit. Because

of unsatisfactory evidence with respect to the balance in the account as of that date, the trial court denied further recovery thereon.

On March 23, 1953, there was on deposit in the agency's account the sum of $5,487.41. The bank attempted to appropriate the entire amount as a set-off against the agency's personal debt to it. The trial court found that $3,042.33 thereof represented plaintiff's premiums received and deposited by the agency.

Plaintiff's largest claim of $16,013.34 was allowed in the amount of $5,638.51. The full claim represented two checks dated February 26, 1953, drawn by the agency on its account in favor of defendant bank in payment of the agency's indebtedness. The evidence indicated that $5,638.51 of that amount was from premiums belonging to plaintiff and such amount was allowed. There was no evidence as to the source of the balance and it was accordingly disallowed.

The primary question is whether or not the deposits in defendant bank, or such parts thereof as could be identified as representing premiums paid to the agency on plaintiff's insurance policies constituted trust funds.

The Supreme Court of Minnesota, in American Surety Co. of New York v. Greenwald, 223 Minn. 37, 25 N.W.2d 681, held, on facts somewhat similar to those involved here, that an express trust was established between an insurance company and its agent, the proposed relationship being evidenced by a letter from the insurance company to its agent. The Court said, 25 N.W.2d at page 684:

"It seems that after some preliminary discussions relative to the proposed business relationship a letter was directed to defendant by Travelers containing the essential elements of the agreement constituting the basis of the alleged trust relationship between defendant and Travelers. This letter, dated March 2, 1940, reads in part as follows:

"' * * * We will pay to your agency also, a one-third of 20% of the gross premiums, plus an additional 7½% commission on the entire premium.

"'It is understood by this office that as you receive the gross premium from the state, you will in turn deduct your total commission as agreed upon in this letter and that you will then remit the balance to us. We will then pay the commission as agreed to the two other agencies involved.'"

At page 685 of 25 N.W.2d:

"In holding that the arrangement existing between defendant and Travelers at the time of the transactions in question constitutes a trust arrangement, we are not achieving that result by ignoring the established principles of the law of trusts. The facts here present well establish that defendant received and collected the premiums under and pursuant to clear and definite terms set forth in the written instrument presented to him by Travelers.

\* \* \* \* \* \*

"That the arrangement here existing between Travelers and defendant constituted an express trust would seem clear under the decisions of this court, illustrative of which is Wertin v. Wertin, 217 Minn. 51, 54, 13 N.W.2d 749, 751, 151 A.L.R. 1302, where this court said: ' "Express trusts are those which are created by the direct and positive acts of the parties, by some writing, or deed, or will; or by words either expressly or impliedly evincing an intention to create a trust." 65 C.J., Trusts, pp. 220, 221, (§ 10)B. In our cases we have defined such trust to be "one created by the parties in language directly and expressly pointing out the persons, property, and purposes of the trust." 6 Dunnell, Dig. & Supp. § 9877, and cases in note 95; In re Estate of Burton, 206 Minn. 516, 289 N.W. 66.'"

The facts in the instant case are even more persuasive. The agreement signed by both plaintiff and its agent expressly used the words "All moneys * * * shall be held by * * * the agent as a fiduciary trust for and on behalf of the Company * * *". The parties could hardly have been more explicit.

██ Trusts may be either express or implied. The facts in the instant case indicate an express trust. The intention of the parties, i. e., plaintiff and the agency, was clearly manifested by the provisions of the written contract between them.

This court had before it a somewhat similar problem in Twin City Fire Ins. Co. v. Green, 8 Cir., 1949, 176 F.2d 532, 535, wherein the court said:

"In fact, even without such a special statutory provision as exists in Missouri, the law generally has recognized an insurance agent, charged with the duty of collecting premiums and not granted the right by his contract to use the funds personally, as having prima facie a fiduciary responsibility. See 16 Appleman, Insurance Law and Practice, § 8786, pages 224, 225; In re Mason Co., D.C.Conn., 254 F. 164."

Defendant places substantial reliance upon the Minnesota case of Mannheimer v. Phinney, 174 Minn. 504, 219 N.W. 765. In that case, a creditor garnished the agent's bank account. Insurance companies intervened. On the facts before it, the trial court held there was a failure to establish a trust fund. The Minnesota Supreme Court sustained. In doing so, it did not hold that a trust relationship could not be created as between an agent and an insurance company but only that on the facts in that case the conclusion of the trial court that there was a failure to establish a trust fund was to be sustained. In doing so, it said, 219 N.W. at page 766:

"*The evidence would hardly permit findings as to the exact source of the fund so in the bank,* and, in the situation shown, *we think the findings of the court that this was not a trust fund* and that the interveners had no rights therein superior to the garnishment *are fairly sustained.*" (Emphasis supplied.)

The court in that case was doing no more than sustaining a permissible finding by the trial court. Note subsequent Minnesota cases of: American Surety Co. v. Greenwald, supra; Minneapolis Fire & Marine Ins. Co. v. Bank of Dawson, 193 Minn. 14, 257 N.W. 510; and In re St. Paul Home Co., 189 Minn. 566, 250 N.W. 451.

██ Defendant would also find fault with the trial court's conclusion that these were trust funds because at the time of entering into the contract the property (premiums) was not in existence and that when the property did come into existence there was no manifestation on the part of the agency to hold the property in trust. Such view overlooks the Minnesota Supreme Court's statement in American Surety Co. of New York v. Greenwald, supra, 25 N.W. 2d at page 686:

"The facts also establish that the 'fiduciary capacity' of defendant existed by reason of an arrangement made prior to and independently of the transactions out of which arose the indebtedness which is the basis of this cause of action."

Here, subsequent to the agreement, the agency collected premiums, deposited them in its account and, in accordance with the terms of the contract, forwarded money to the plaintiff. There was no reason or occasion to re-affirm the agreement regarding the establishment of a trust. There was no necessity to again evidence their intention. Evidence of a contrary intention or usage by the agency became apparent only when the agency, in violation of the bank rule, drew and the defendant bank accepted checks on the deposit in payment of loans on forged securities given to the defendant.

The trial court's conclusion that these were trust funds finds ample support in the record and must be sustained.

The second question is whether or not such trust funds were subject to defendant bank's right of set-off against the agency's debt to it. Counsel for both parties agree that the applicable Minnesota rule is as stated in Berg v. Union State Bank, 179 Minn. 191, 229 N.W. 102, 103, as follows:

"It is uniformly held that, if the bank has notice or knowledge of the true ownership of the fund, or if it has knowledge of facts and circumstances sufficient to require inquiry on its part, which inquiry, if made, would have disclosed the true ownership, it cannot apply the fund to an individual indebtedness owing to it by the agent or trustee depositing the same. Rodgers v. Bankers National Bank, [179 Minn. 197] 229 N.W. 90, file 27457, 27458, in this court.

\*   \*   \*   \*   \*

"That rule is that a bank, even though it has no express or implied knowledge of the true ownership of the fund deposited in his own name by the trustee or agent, cannot apply such fund to the individual debt of such trustee or agent, where the lack of knowledge has not resulted in any detrimental change in the bank's position and no superior equities have arisen in its favor."

The trial court, in finding that "the Bank knew at all times since the account was established that it was partially made up of premiums collected for and belonging to the plaintiff," quoted from the testimony of one of the bank's officers as follows:

"'Q. And you were aware that Auch had been depositing premiums collected on National Indemnity Company policies in that particular account and drawing checks on that account? A. Yes, I was aware of that.

"'Q. And that was true during the entire period, was it not? A. That is correct.

"'Q. You recognized that there was an agency relation throughout that entire period between the National Indemnity Company and Mr. Auch, did you not? A. I assume that there was an agency relation between them inasmuch as he was writing their policies.

"'Q. And you knew then that these premiums which he collected did belong to the National Indemnity Company, isn't that correct? A. I would assume that they did.

"'Q. As a matter of fact you knew that all during this period, isn't that correct?—or you assumed so, let's put it. A. I assumed that the premiums that he had collected on policies sold for the National Indemnity Company were premiums that belonged to the National Indemnity Company. There was never any question about that.

"'Q. And that was true the entire period of time? A. That is correct.'"

This was actual knowledge on the part of the bank that premiums collected by the agency and deposited in the general account belonged to plaintiff. As put by the trial court, "This knowledge permits of no presumption to the contrary \*   \*   \*".

A trust relationship had been established and the defendant "assumed" during "the entire period of time" that the premiums collected by the agency and deposited in its account "belonged to the National Indemnity Company," (plaintiff). The trial court's finding that the defendant bank had knowledge of the true ownership of the funds is sustained.

Defendant contends that even if a trust relationship between plaintiff and the agency be established, that plaintiff may not recover from defendant because superior equities have arisen in its favor. It claims that its loans to the agency

were made not only upon the strength of the assignment to it of deferred payment premium contracts but upon the strength of the fact that the agency carried large average balances in its account. The superior equities rule relied upon by defendant, and as stated in Berg v. Union State Bank, supra, presupposes lack of knowledge of the true ownership of the fund. If it is true that defendant partially based its loans on the agency's balances, then it was doing so with the knowledge that a part of the balances belonged to plaintiff. Under the circumstances, the bank's equities fail to impress us as being "superior". A bank having express (as here) or implied knowledge that an agent or trustee is depositing trust funds in an account in its own name possesses no equities superior to those of the true owner of the trust funds.

■ With specific reference to checks drawn by the agency on its account in favor of defendant bank and in payment of the agency's personal indebtedness to it, the defendant also relies upon the provisions of Minnesota Statutes Annotated, Section 520.09, which is as follows:

"520.09 Deposit in fiduciary's personal account. If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and endorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith."

It will be noted that the above statute contains an exception to the bank's non-liability where it makes payment of the personal check "with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith".

In the first place, the checks referred to were not to third persons but to the defendant bank itself in payment of the agency's obligation to it. The bank took part in the transaction and benefitted thereby. In the second place, the acceptance of the agency checks in payment of deferred premium contracts assigned to the bank was a violation of the bank rule. In the third place, the bank knew at all times since the account was established that it was partially made up of premiums collected for and belonging to the plaintiff.

The statute relied upon by defendant is not a defense for the bank where it took part in the transaction, personally profited thereby and did so with knowledge of the facts. The recent case of Western Surety Co. v. Farmers & Merchants State Bank of Breckenridge, Minn.1954, 63 N.W.2d 377, cited by defendant, is not in point.

■ The most that the defendant can claim on this appeal is that the questions of Minnesota law which it has raised are not free from doubt. This court has repeatedly said that with respect to such questions it will accept the considered views of the trial judge unless convinced of error, and that if he has reached a permissible conclusion as

to a question of local law, there will be no reversal. See Buder v. Becker, 8 Cir., 185 F.2d 311, 315; National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243, 38 A.L.R.2d 814; Guyer v. Elger, 8 Cir., 216 F.2d 537.

The judgment appealed from is affirmed.