GENERAL CASUALTY COMPANY OF
WISCONSIN, et al., Appellants,

v.

MID–CONTINENT AGENCIES,
INC., et al., Defendants,

Fidelity Bank, f/k/a Southwest Fidelity
State Bank of Edina, Respondent.

FIDELITY BANK, Respondent,

v.

MID–CONTINENT AGENCIES,
INC., et al., Defendants,

West Bend Mutual Insurance
Co., et al., Appellants.

No. C5–91–2161.

Court of Appeals of Minnesota.

May 12, 1992.

Review Denied July 16, 1992.

Mark G. Ohnstad, Thomsen & Nybeck, P.A., Edina, for appellants General Cas. Co. of Wisconsin, et al.

R. Walter Bachman, Lindquist & Vennum, Minneapolis, for respondent Fidelity Bank, f/k/a Southwest Fidelity State Bank of Edina.

Considered and decided by HUSPENI, P.J., and SHORT and STONE *, JJ.

---

* Retired judge of the district court, acting as judge of the court of appeals by appointment pursuant to Minn.Const. art. VI, § 2.

## OPINION

SHORT, Judge.

This action for conversion involves monies deposited by an independent insurance agent. A bank applied the monies against the agent's debt to the bank. The insurers objected, claiming the monies were trust funds. On cross motions for summary judgment, the trial court found no fiduciary relationship existed between the agent and the insurers. On appeal from judgment in favor of the bank, the insurers argue they are entitled to judgment as a matter of law because agents hold premiums in a fiduciary capacity. In the alternative, the insurers argue issues of material fact preclude the entry of summary judgment. We disagree and affirm.

## FACTS

Mid–Continent Agencies (agent) was an independent insurance agent which solicited business for a number of insurance companies, including General Casualty Companies and West Bend Mutual Insurance Company (insurers). Written contracts governed the relationships between the agent and each insurer. The contracts provided the parties would exchange monthly statements identifying all insurance sales or other transactions. On insurance policies billed by the agent, the agent was required to pay to the insurers the amount of premiums less commissions no later than forty-five days after the end of the month in which the policies became effective. On occasion, each insurer accepted late payments from the agent.

Neither contract required the agent to maintain a separate bank account for the deposit of premiums. The insurers knew the agent commingled premiums with its general operating funds.

The agent maintained three accounts at Fidelity Bank (bank): (a) an operating account, from which the agent paid ordinary business expenses and monies due the insurers, (b) a loan account through which

the agent maintained a $425,000 line of credit from the bank, and (c) a collateral account, into which the agent deposited funds. The bank secured the agent's line of credit with a perfected, first priority security interest in the agent's accounts and contract rights. At weekly intervals, the bank transferred sufficient funds from the agent's collateral account to the loan account to bring the agent's line of credit up to approximately $425,000.

## ISSUES

I. Do insurance agents hold premiums for insurers in a fiduciary capacity as a matter of law?

II. Is there a factual dispute concerning the relationship between the agent and the insurers?

## ANALYSIS

■ On appeal from a grant of summary judgment, this court determines whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). We view the evidence in the light most favorable to the non-moving party, and do not defer to a trial court's application of law. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■ To make out a prima facie claim for conversion, a party must show it had a right to the use, possession, or ownership of the property converted. *See Dain Bosworth Inc. v. Goetze*, 374 N.W.2d 467, 471 (Minn.App.1985) (citing *Larson v. Archer–Daniels–Midland Co.*, 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948)). Summary judgment is appropriate if a party fails to make a sufficient showing to establish the existence of an essential element to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## I.

■ The insurers argue Minnesota law requires agents to hold premiums in a fiduciary capacity for insurers. We disagree. In Minnesota, agents are not required by statute or regulation to segregate deposits of premium monies from other monies and are allowed to use "premiums" for operating expenses. *See* Minn.Stat. § 60A.17, subd. 17 (1990); *see also* 1 Austin W. Scott and William F. Fratcher, *The Law of Trusts* § 12.2, at 143–44 & n. 15 (4th ed. 1987) (Minnesota is not among states which provide by statute that premiums received by an insurance agent shall be held in a fiduciary capacity). The insurers' reliance on Minn.R. 2795.1300 (1991) is misplaced. That rule establishes a fiduciary relationship between the agent and the insured, not the insurer. We find no authority to conclude that every relationship between an insurer and agent creates a fiduciary payment obligation or renders premiums trust funds. *See, e.g., United Am. Ins. Co. v. Koelfgen*, 87 B.R. 993 (Bkrtcy.D.Minn. 1988) (relationship between agent and insurer was one of debtor and creditor as a matter of law); *American Sur. Co. of N.Y. v. Greenwald*, 223 Minn. 37, 44, 25 N.W.2d 681, 685 (1946) (a trust is created between agent and insurer where the agent keeps premium monies in a separate fund for the benefit of insurer; a debt is created if the agent has unrestricted use of premium monies, and is liable to pay a similar amount to the insurer).

■ The insurer General Casualty also argues its written agreement with the agent establishes a fiduciary payment obligation. We disagree. While that contract purports to create a fiduciary relationship, numerous provisions in the document describe a debtor-creditor arrangement. For example, the requirement that the agent make monthly payments to the insurers rather than remit premiums actually received is more typical of a commercial relationship. *See In re Pehkonen*, 15 B.R. 577, 581 (Bkrtcy.N.D.Iowa 1981). In addition, it is inconsistent with the concept of a trust relationship for the agent to have unrestricted use of the premiums and no obli-

gation to segregate the monies. *See Farmers State Bank of Fosston v. Sig Ellingson & Co.,* 218 Minn. 411, 418, 16 N.W.2d 319, 323 (1944) (where a party receiving money is not required to segregate it or hold it as a separate fund for the benefit of another, a debt and not a trust is created). The General Casualty contract as a whole establishes a debtor-creditor relationship despite its passing reference to "fiduciary capacity." *See Koelfgen,* 87 B.R. at 993; *Iowa Mut. Ins. Co. v. Olson,* Bkrtcy.Adv.Proc. 4-86-17 (Bkrtcy.D.Minn. Oct. 15, 1986).

The holding in *American Nat'l Bank of St.P. v. National Indem. Co. of Omaha,* 222 F.2d 513 (8th Cir.1955) is not contrary to our opinion. In that case, the insurer was unaware the agent was commingling premiums with other agency funds, and there was no conduct by the parties which was inconsistent with a fiduciary relationship. *See American Nat'l Bank,* 222 F.2d at 515; *National Indem. Co. of Omaha v. American Nat'l Bank of St.P.,* 120 F.Supp. 713, 715-16 (D.Minn.1954). By contrast, the relationship between the insurers and their agent in this case bears none of the indicia of a trust. The law does not presume that insurance agents hold premiums for insurers in a fiduciary capacity.

## II.

In the alternative, the insurers argue there are material facts in dispute concerning the nature of their relationship with the agent. We disagree. The record demonstrates (a) the agent was required to pay the insurers without regard to whether premiums were collected, (b) the agent was not required to maintain a separate bank account for the deposit of premiums, (c) the insurers knew the agent commingled premiums with general operating funds, (d) the agent was an independent contractor and not an employee of the insurers, and (e) the insurers accepted late payments from the agent despite knowledge of the agent's deteriorating financial situation. Under these undisputed facts, the relationship between the insurers and the agent was one of creditor and debtor. *See, e.g., Koelfgen,* 87 B.R. at 996-97; *Pehkonen,* 15 B.R. at 580-82; *Downey v. Humphreys,* 102 Cal.App.2d 323, 332-34, 227 P.2d 484, 490-91 (1951); *Commercial Ins. Co. of Newark v. Apgar,* 111 N.J.Super. 108, 118-20, 267 A.2d 559, 564-65 (1970); *McFarling v. Demco, Inc.,* 546 P.2d 625, 628-29 (Okla.1976); *Korlann v. E-Z Pay Plan, Inc.,* 247 Or. 170, 173-78, 428 P.2d 172, 174-76 (1967).

The insurers also argue summary judgment is inappropriate because there are fact issues concerning the bank's knowledge of the insurers' agreements with the agent. Because the insurers failed to show ownership of the monies held by the agent, the insurers and the bank were merely competing creditors. Under these circumstances, it is immaterial whether the bank had knowledge of the insurers' claims.

## DECISION

Premium monies held by an insurance agent are not automatically trust funds. If an insurer consents to the agent's commingling of premium monies with other operating funds, their arrangement is inconsistent with the concept of a trust. The undisputed facts demonstrate a debtor-creditor relationship between the agent and the insurers. Under these circumstances, summary judgment in favor of the bank was proper as a matter of law.

Affirmed.